UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL EDWARD JAMES, | No. 2:15-cv-2717 AC |
| Plaintiff, | |
| v. | ORDER |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[2]

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration. See https://www.ssa.gov/agency/commissioner.html (last visited by the court on March 3, 2017). She is therefore substituted as the defendant in this action. See 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986). SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of (continued…)

1

For the reasons that follow, the court will grant plaintiff's motion for summary judgment, deny the Commissioner's cross-motion for summary judgment, and remand the matter for further proceedings.

## I.   PROCEDURAL BACKGROUND

Plaintiff applied for disability insurance benefits and for supplemental security income on February 26, 2013. Administrative Record ("AR") 24 (ALJ decision).[3] The disability onset date for both applications was alleged to be July 15, 1998. Id. The applications were disapproved initially and on reconsideration. Id. On July 2 and November 7, 2014, and February 27, 2015, ALJ Mark C. Ramsey presided over hearings on plaintiff's challenge to the disapprovals. AR 60-124 (transcripts). Plaintiff was present and testified at the first and third hearings.[4] Id. He was represented by counsel at all three hearings. Id. Alina Sala, Vocational Expert ("VE"), testified at the second hearing, and Jim Vanett, VE, testified at the third hearing. Id.

On April 2, 2015, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 24-51 (decision), 52-59 (exhibit list). On November 3, 2015, the AC denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-7 (decision, order & additional exhibits).

Plaintiff filed this action on December 30, 2015. ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 7, 8. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 22 (plaintiff's summary judgment motion), 27 (Commissioner's summary judgment motion).

---

Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 et seq., is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").
[3] The AR is electronically filed at ECF Nos. 11-1 to 15-9 (AR 1 to AR 3,747). The paper version is lodged with the Clerk of the Court. ECF No. 11.
[4] Plaintiff answered occasional questions at the second hearing, but was not sworn.

## II. FACTUAL BACKGROUND

Plaintiff was born on March 1, 1961, and accordingly was 37 years old on the alleged disability onset date, making him a "younger person" under the regulations. AR 48; see 20 C.F.R §§ 404.1563(c) (age as a vocational factor), 416.963(c) (same). Plaintiff has at least a high school education, and can communicate in English. AR 48.

## III. LEGAL STANDARDS

"[A] federal court's review of Social Security determinations is quite limited." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015). The Commissioner's decision that a claimant is not disabled will be upheld "unless it contains legal error or is not supported by substantial evidence." Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

"'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." Garrison, 759 F.3d at 1009. "While inferences from the record can constitute substantial evidence, only those reasonably drawn from the record will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation and internal quotation marks omitted).

The court reviews the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Rounds v. Commissioner Social Security Admin., 807 F.3d 996, 1002 (9th Cir. 2015); Attmore v. Colvin, 827 F.3d 872, 875 (9th Cir. 2016) ("[w]e cannot affirm … "simply by isolating a specific quantum of supporting evidence").

It is the ALJ's responsibility "to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." Brown-Hunter, 806 F.3d at 492 (internal quotation marks omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Thus, in reviewing the Commissioner's decision, this court does not substitute its discretion for that of the Commissioner. See Brown-Hunter, 806 F.3d

at 492 ("[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency") (internal quotation marks omitted).

The court may review "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Garrison, 759 F.3d at 1010. Finally, the court will not reverse the Commissioner's decision if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination …." Brown-Hunter, 806 F.3d at 492 (internal quotation marks omitted).

## IV. RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 423(a)(1)(E) (DIB), 1381a (SSI). Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

4

1  Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V.   THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 1999.
>
> 2. [Step 1] The claimant has not engaged in substantial gainful activity since July 15, 1998, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. [Step 2] The claimant has the following severe impairments: degenerative disc disease of the lumbar spine; degenerative joint disease of the left non-dominant shoulder; right shoulder degenerative joint disease; malunion left wrist post 2011 injury; headache disorder/migraines (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525,404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. [Residual Functional Capacity] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can lift and carry up to ten pounds continuously; he can sit, stand or walk for six hours of an eight hour day; can occasionally overhead reach and *frequently*

5

*reach in all directions and handle with either the left or right hand/arm* and continuously finger and feel with each hand; can use feet continuously; can occasionally stoop; can never climb ladders, ropes or scaffolds and continuously can dim b ramps/stairs and balance; can frequently kneel and crawl; can occasionally be exposed to extreme cold and heat. [Emphasis added.]

6. [Step 4] The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. [Age] The claimant was born on March 1, 1961 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. He is now age 54, considered to be an individual closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. [Education] The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. [Transferability of job skills] Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. [Step 5] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 15, 1998, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 27-51.

As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 32.

## VI.   ANALYSIS

Plaintiff alleges that the ALJ erred by rejecting the "reaching" limitations assessed by the consultative examiner, David Frank Osborne, M.D., without providing clear and convincing reasons for doing so.[5]

---

[5] Plaintiff also argues that the ALJ failed to fully and fairly develop the record regarding the testimony of the Vocational Expert. This issue is addressed below in the discussion regarding remand.

6

A. Standards

The ALJ may reject the opinion of an examining doctor only for "clear and convincing" reasons if the opinion is not contradicted by another doctor, or for "specific and legitimate" reasons if it is contradicted. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). The Commissioner argues that "Dr. Osborne's opinion was controverted by the opinions of State agency physicians, Drs. Amon and Pong." ECF No. 27 at 18.

Specifically, according to the Commissioner, "Dr. Amon opined that Plaintiff could perform light exertional work *and specifically concluded that he could reach overhead occasionally and in all other directions frequently with both arms*." ECF No. 27 at 24 (emphasis added). The Commissioner cites to "AR 184-87" as the location of this supposed opinion. However, the court is unable to find any such opinion by Dr. Amon. If anything, Dr. Amon's opinion only confirms Dr. Osborne's opinion. Specifically, Dr. Amon stated that regarding "manipulative limitations," plaintiff was "[l]imited." AR 185. Dr. Amon specified that plaintiff's limitation applied to his reach "[l]eft in front and/or laterally," and "[l]eft overhead." Id.; AR 209 (Dr. Amon, same). Indeed there is no agency doctor opinion that contradicts Dr. Osborne's opinion in this area. See AR 139 (Dr. Pong: "[r]eaching any direction" is "[l]imited"); AR 159 (Dr. Pong, same).

The Commissioner identifies no other doctor's opinion that contradicts Dr. Osborne's. Therefore, in order to reject Dr. Osborne's opinion, the ALJ must give "clear and convincing" reasons.

B. Dr. Osborne's Opinion

On August 19, 2014, Dr. Osborne conducted an "Orthopaedic Consultation" of plaintiff at the request of the ALJ. AR 2883, 2884-96 (report).

1. Review of medical records

Dr. Osborne reviewed plaintiff's medical records, which included x-rays and MRIs. AR 2885. Those records showed, among things:

- "There were degenerative changes at the acromioclavicular joint and glenohumeral joint of both shoulders;"

7

- "There was evidence of a calcium deposit in the rotator cuff tendon of the left shoulder;"
- "Radiological report of MRI of the left shoulder" showed "[t]here was a 1-cm full thickness tear of the supraspinatus.

AR 2885. Dr. Osborne also reviewed reports from Michael Vance, M.D.

Dr. Vance saw plaintiff on April 5, 2013, and reported, in regard to plaintiff's left wrist:

- "X-rays done at the time of his visit showed a scaphoid waist nonunion with bony overgrowth and central cyst, slight beaking of radial styloid and STT joint without loss of joint space;" and
- "Surgical management may improve his pain if bony union is achieved but patient counseled that restoration of a 'normal' wrist was not realistic."

AR 1474. Dr. Vance saw plaintiff again on July 22, 2013,[6] and reported, in regard to plaintiff's left wrist, "[a]t this time, it was explained once again that surgery would not restore his wrist to normal and that he would still experience intermittent pain and stiffness."  AR 1474.

### 2. Physical examination

Dr. Osborne also conducted a "Physical Examination" of plaintiff.  AR 2886-90.  Dr. Osborne conducted a "range of motion" examination of plaintiff, and found that regarding the "left forearm/wrist," there was "mild decreased range of motion compared to the right." AR 2888.

### 3. Findings

Having reviewed plaintiff's medical records and having examined him, Dr. Osborne completed a "Medical Source Statement of Ability To Do Work-Related Activities (Physical)." AR 2891-96.  Dr. Osborne opined that regarding plaintiff's left hand, he was limited to occasionally: reaching overhead; reaching in all other directions; and "handling."  AR 2893.  In addition, plaintiff could never "push/pull" with his left hand.[7]  Id.  The ALJ accorded "substantial

---

[6] Dr. Osborne refers to a visit to Dr. Vance on May 22, 2013.  AR 2885.  However, no party identifies any report of this visit, and the court is unable to locate it in the record.

[7] Dr. Osborne's opinion included other limitations, but the ones discussed here are the only ones that, according to plaintiff, the ALJ improperly rejected.  Also, Dr. Osborne found no limitations on plaintiff's use of his right hand.  AR 2893.

weight" to Dr. Osborne's opinions.  AR 45.  According to the ALJ, those opinions "are supported by each other," Dr. Osborne "directly evaluated the claimant in August 2014 and supported his opinion with objective findings," and "he also had access to the medical imagery of record." AR 45.

Nevertheless, the ALJ rejected Dr. Osborne's opinion regarding plaintiff's left-hand reaching and handling limitations, instead finding that plaintiff could "frequently" reach and handle with his left hand.  AR 45.  The sole explanation offered by the ALJ is the "longitudinal record of treatment by primary care physician Dr. Chang for both shoulders evidenced in the record …."  AR 45.  However, the ALJ does not identify where in the record there is any medical or other evidence that refutes Dr. Osborne's limitations findings.  Nor does the ALJ explain what in Dr. Chang's records refutes Dr. Osborne's limitations findings.

References to Dr. Chang and his treatment record are scattered throughout the decision and the record, but the court can locate nothing in the record constituting an opinion from Dr. Chang that would tend to undermine Dr. Osborne's opinions in any way.  Instead, the ALJ refers to the *entire* "longitudinal record" of treatment by Dr. Chang, and apparently asks the reviewing court to find whatever evidence might be hidden there that could support the decision.[8]  The court declines the invitation to play doctor by trying to determine whether any of Dr. Chang's various treatment notes or laboratory findings – such as those summarized by the ALJ at AR 28: "multilevel degenerative changes and posterior facet hypertrophy; mild grade 1 retrolisthesis (Exhibit 34F/440), … bilateral prominent neural foraminal narrowing T11-T12 due to diffuse disc bulge; retrolisthesis L5-S1 with diffuse disc bulge; L5-S1 disc protrusion, closely related to left S1 nerve root and severe bilateral neural foraminal narrowing due to bulge and disc osteophyte complexes; multilevel hypertrophic facet disease that is moderate at L3-L4 (Exhibit 34F/527 also at 40F)" – supports or refutes Dr. Osborne's opinion.

////

---

[8] Cf. United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs").

9

The ALJ erred by failing to give clear and convincing reasons for rejecting Dr. Osborne's opinion. The court accordingly credits the opinion as true, and examines the RFC in light of plaintiff's limitation to work requiring only "occasional" reaching and handling by the left hand. The RFC, as noted above, calls for plaintiff to perform work requiring "frequent" reaching and handling by the left hand. Accordingly, the ALJ erred at the RFC stage. As discussed below, the error was not harmless.

C. VE Testimony

On November 7, 2014, the ALJ conducted a supplemental hearing at which he took the testimony of Vocational Expert Alina Sala. AR 91-102. The ALJ's first hypothetical to the VE was "based on Exhibit 38F," which is Dr. Osborne's opinion. See AR 93. The ALJ then faithfully recounted Dr. Osborne's pertinent limitations in the hypothetical he posed to the VE:

> On the left hand he's limited to occasional reaching overhead, occasional reaching all other directions, occasionally handling, … and never push/pull with the left hand.

AR 94. The VE testified that given all the posited limitations, the following work was available to plaintiff:

- Parking lot attendant, DOT No. 915.473-010;[9]
- Sales attendant, DOT No. 299.677-010;
- Ticket taker, DOT No. 344.667-010;
- Shipping-and-receiving weigher, DOT No. 222.387-074;
- Routing clerk, DOT No. 222.687-022; and
- Order caller DOT No. 209.667-014.

However, all of these positions require "frequent" handling. All of them other than the shipping-and-receiving weigher position also require "frequent" reaching. The weigher position

---

[9] The Dictionary of Occupational Titles ("DOT") is available on Westlaw and LEXIS. The Commissioner uses the DOT to determine which jobs exist in significant numbers in the national economy. See 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(2); Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007) ("[i]n making disability determinations, the Social Security Administration relies primarily on the Dictionary of Occupational Titles for information about the requirements of work in the national economy") (internal quotation marks omitted).

1  requires only occasional reaching. 1991 WL 672108.

2  On February 27, 2015, the ALJ conducted a second supplemental hearing at which he
3  took the testimony of Vocational Expert Jim Vanett. AR 103. The ALJ asked the VE to use the
4  same limitations as were used in the prior hearing. AR 113-14. The VE then identified the
5  following jobs, which, he stated are "jobs with the allowance for the helper hand …." AR 115:[10]

6  • Bottle packer, DOT No. 920.685-026;
7  • X-ray inspector, DOT No. 529.685-274; and
8  • Sausage inspector, DOT No. 529.587-014.

9  However, the bottle packer position requires reaching and handling "constantly." X-ray
10 inspector and sausage inspector require reaching and handling "frequently."

11  D. Harmless Error Analysis

12 The ALJ's error is not harmless, as all the jobs identified by the VE require plaintiff to
13 perform "frequent" handling, even though Dr. Osborne's opinion limits him to "occasional"
14 handling. In addition, all the identified jobs but one require frequent reaching. Defendant argues
15 that any error is harmless, because one of the jobs the VE identified – shipping-and-receiving
16 weigher (DOT No. 222.387-074) – "requires only occasional reaching." ECF No. 27 at 27. The
17 argument fails because it omits the critical fact that the identified weigher position does require
18 frequent *handling*.

19  E. Remand for Benefits or for Further Proceedings

20 As discussed above, the ALJ erred in finding that including work requiring frequent
21 reaching and handling in the RFC. That error was not harmless, because, crediting Dr. Osborne's
22 testimony as true, plaintiff could not perform such jobs. Accordingly, the court is authorized "to
23 'revers[e] the decision of the Commissioner of Social Security, with or without remanding the
24 cause for a rehearing.'" Treichler v. Comm'r of Social Security Admin., 775 F.3d 1090, 1099
25 (9th Cir. 2014). "[W]here the record has been developed fully and further administrative

---

[10] The hypothetical made no mention of the limitation that plaintiff could never push or pull with the left hand, and the VE makes no mention of it. However, plaintiff does not challenge the decision on this ground, and therefore the court does not consider it.

1  proceedings would serve no useful purpose, the district court should remand for an immediate
2  award of benefits." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

3  More specifically, the district court should credit evidence that was rejected during the
4  administrative process and remand for an immediate award of benefits if (1) the ALJ failed to
5  provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues
6  that must be resolved before a determination of disability can be made; and (3) it is clear from the
7  record that the ALJ would be required to find the claimant disabled were such evidence credited.
8  Benecke, 379 F.3d at 593 (citing Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000), cert.
9  denied, 531 U.S. 1038 (2000)).

10  Under the second step in the remand analysis,[11] the court must "review the record as a
11  whole and determine whether it is fully developed, is free from conflicts and ambiguities, and 'all
12  essential factual issues have been resolved.'" Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir.
13  2016) (quoting Treichler, 775 F.3d at 1101). Under the third step in this analysis, the court
14  should remand for further proceedings "when the record as a whole creates serious doubt as to
15  whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Burrell
16  v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014) (internal quotation marks omitted). In this case,
17  even when Dr. Osborne's opinion is credited, the record is ambiguous about whether plaintiff can
18  perform the jobs identified by the VE.

19  As discussed above, the VE's testimony was based upon hypotheticals that credited Dr.
20  Osborne's opinions. However, even though the hypotheticals called for only "occasional"
21  reaching and handling, all the jobs the VE identified called for "frequent" handling, and all but
22  one called for "frequent" reaching. This was an apparent conflict that the ALJ was required to
23  resolve:

> Occupational evidence provided by a VE or VS generally should be
> consistent with the occupational information supplied by the DOT.
> When there is an apparent unresolved conflict between VE or VS
> evidence and the DOT, *the adjudicator must elicit a reasonable*

---

[11] The first step is satisfied because, as discussed above, the ALJ failed to provide legally sufficient reasons for rejecting Dr. Osborne's opinions.

> *explanation for the conflict before relying on the VE or VS evidence* to support a determination or decision about whether the claimant is disabled.

"Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions," SSR 00-4p (emphasis added).[12] The ALJ did not ask either VE to explain the apparent conflict between the "frequent" aspect of the requirement and the "occasional" aspect of the hypotheticals. Thus, the court has no way of knowing whether the VEs were simply mistaken about what was being asked of them, or what the requirements of the jobs were, or whether notwithstanding the DOT's frequency requirement, the jobs could in fact be performed by a person whose RFC was limited to "occasional" reaching and handling with his left hand only.[13]

In addition, when Dr. Osborne examined plaintiff's hands, he found:

> Evaluation of the hands reveal no significant deformities. With regard to the hands, the claimant is able to manipulate the use of a pen with ease. Pinch positioning was achieved adequately bilaterally. The claimant does not restrict the use of either hand during the examination. The claimant can approximate fingers and make a fist without difficulties bilaterally.

AR 2889. It is possible that the ALJ rejected Dr. Osborne's opinion on plaintiff's "handling" abilities at least in part because of this finding. See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[t]he incongruity between Dr. Nachenberg's Questionnaire responses and her medical records provides an additional specific and legitimate reason for rejecting Dr. Nachenberg's opinion of Tommasetti's limitations"). However, the ALJ does not say so, and the court may review only the grounds specified by the ALJ, not any grounds he might have relied upon.[14] See Garrison, 759 F.3d at 1010 (the court may review "only the reasons provided by the

---

[12] 65 Fed. Reg. 75,759 (December 4, 2000).

[13] Indeed, the second VE may well have intended this, when he stated that the identified jobs are "jobs with the allowance for the helper hand …." AR 115. However, the court would only be guessing, as the ALJ did not ask for a reasonable explanation of the apparent conflict, and the VE did not offer one (such as, for example, whether in his experience, the jobs did not actually require frequent reaching and handling). See Gutierrez v. Colvin, 844 F.3d 804, 809 (9th Cir. 2016) ("[t]he ALJ was entitled to rely on the expert's 'experience in job placement' to account for 'a particular job's requirements'") (quoting SSR 00-4p).

[14] As discussed above, the sole reason the ALJ gave for rejecting Dr. Osborne's opinions were the supposedly contrary opinions or treatment records of Drs. Amon, Pong and Chang. The court (continued…)

ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely"). On remand, if the ALJ again rejects Dr. Osborne's opinion, he will have the opportunity to clarify his reasons for doing so.

## VII.   CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 22), is GRANTED;
2. The Commissioner's cross-motion for summary judgment (ECF No. 27), is DENIED;
3. This matter is remanded to the Commissioner for further proceedings consistent with this opinion; and
4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

DATED: March 6, 2017

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

---

also notes that the ALJ went into great detail about his reasons for rejecting the broad "allegations" of plaintiff and his girlfriend, but he did not offer those critiques as a basis for rejecting Dr. Osborne's very specific limitation of "occasional" reaching and handling with the left hand.